UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

THE O.N. EQUITY SALES COMPANY,
    Plaintiff,

v.                           No. 2:07-cv-142

RICHARD S. STAUDT, Individually
and as Trustee of STAUDT
HOLDINGS, LLC, and STAUDT SIX
TRUST, and JANE M. STAUDT,
Individually and as Trustee of
STAUDT HOLDINGS, LLC, and
STAUDT SIX TRUST,
    Defendants.

**OPINION AND ORDER**

On June 22, 2007, the O.N. Equity Sales Company ("ONESCO") brought this action for declaratory and injunctive relief against the Defendants, Richard S. Staudt and Jane M. Staudt, both individually and as trustees of Staudt Holdings, LLC, and the Staudt Six Trust.  The Staudts filed an arbitration claim against ONESCO with the National Association of Securities Dealers ("NASD") on April 24, 2007.[1]  ONESCO seeks an order enjoining the

---

[1]  Different groups of investors have also brought arbitration claims against ONESCO arising out of the same underlying facts. ONESCO has brought approximately eighteen actions in different federal courts seeking to enjoin various parties from pursuing the NASD arbitration.  Because of the shared factual background, the legal issues and procedural posture in the majority of these cases are nearly identical.  Other federal district courts have already authored opinions that directly confront the issue of arbitrability in substantially similar proceedings.  *See O.N. Equity Sales Co. v. Pals*, No. 07-4049 (N.D. Iowa, filed Sept. 6,

Staudts from taking further action on their NASD claims and for a declaration that ONESCO has no obligation to arbitrate the NASD claims.

On August 9, 2007, ONESCO filed a motion seeking a preliminary injunction (Doc. 10) to enjoin the Staudts from taking further action on their NASD claim or from filing any other NASD claims relating to the Lancorp Fund.  On August 30, 2007, the Staudts moved to compel ONESCO to engage in arbitration (Doc. 15) under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.  For the reasons specified below, the Court denies Plaintiff's Motion for Preliminary Injunction (Doc. 10) and grants Defendants' Motion to Compel Arbitration (Doc. 15).  In addition, for the reasons discussed below, the Court denies as moot the following pending motions: Plaintiff's Motion for Consolidation of Trial on the Merits with Preliminary Injunction Hearing (Doc. 11); Defendants' Motion for Protective Order (Doc. 12); Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability (Doc. 16); and Plaintiff's Motion for an Order Precluding Summary Disposition of Defendants' Motion to Compel Arbitration (Doc. 26).

---

2007); *O.N. Equity Sales Company v. Venrick*, 508 F. Supp. 2d 872 (W.D. Wash. 2007); *O.N. Equity Sales Co. v. Prins*, No. 07-3075 (D. Minn. filed Nov. 6, 2007).

**I.   FACTS**

ONESCO is an Ohio-based securities broker-dealer registered in all fifty states and is a NASD member.  From March 23, 2004, to January 3, 2005, Gary Lancaster was a registered representative of ONESCO.  In March, 2003, Lancaster organized the Lancorp Financial Fund Business Trust ("Lancorp Fund").  Prior to and during his tenure with ONESCO, Lancaster served as trustee for the Lancorp Fund.[2]  This case arises out of claims filed by the Staudts against ONESCO alleging liability for the fraudulent sale of securities in connection with the Lancorp Fund.

On March 17, 2003, Lancaster issued a Private Placement Memorandum which described Landcorp Fund as an unregistered, closed-end, non-diversified management investment company.  (Compl. Ex. A. at 1.)  The memorandum stated that up to 50,000 investor shares were to be sold through a private placement offering to no more than 100 investors at $5,000 per share.  *Id.*  On February 8, 2004, the Staudts executed two subscription agreements for twenty-two shares (at a cost of $110,000) on behalf of Staudt Holdings, LLC, and Staudt Six Trust.  (Compl. Ex. F, G.)  Under the specific terms of the subscription

---

[2]  ONESCO contends that Lancaster did not disclose to it his prior or continuing involvement with the Lancorp Fund.  This factual dispute, while relevant to issues of liability, does not affect the arbitrability analysis.

3

agreements and the Private Placement Memorandum, the funds were not invested at that time; instead they were held in escrow by Lancaster until the closing date. (Compl. Ex. A at 1-3.) The memorandum further specified that "the offering [was] made subject to withdrawal, cancellation, or modification by [Lancorp] without notice" until the closing date. (Compl. Ex. A at 2.) Lancorp agreed to amend or supplement the memorandum in the event that there were any material changes in the offering prior to closing. *Id.*

Such material changes did occur. The Lancorp offering included a feature whereby insurance would be purchased to protect against failure by Lancorp to return investor funds upon redemption of their shares. *Id.* However, Landcorp could not acquire such insurance because of changes in the insurance industry in 2003 and 2004. (Lancaster Decl. ¶¶ 3, 4.) Consequently, Lancaster sent a letter on April 5, 2004, to all investors, including the Staudts, seeking that subscribers either (1) confirm their subscription participation, or (2) withdraw their subscriptions. (Lancaster Decl. ¶¶ 4-7, Ex. B.) The Staudts confirmed their subscription and invested an additional $110,000 in April and November of 2004. (Def.'s Mem. in Supp. of Mot. to Compel Arbitration Ex. 3; Compl. Ex. H ¶ 35.)

The Lancorp offering became effective on May 14, 2004. (Lancaster Decl. at ¶ 9, Ex. F.) Lancorp invested heavily in

what turned out to be a Texas-based Ponzi scheme; as a result, Lancorp failed and entered receivership. (Compl. ¶ 13.) On approximately April 24, 2007, the Staudts brought an arbitration action before the NASD against ONESCO alleging violations of federal and state securities law, breach of contract, fraud, and negligence in connection with the Lancorp Fund. (Compl. ¶ 37, Ex. H at ¶¶ 72-141.) At the heart of the Staudts' arbitration action is their allegation that ONESCO negligently failed to properly supervise Lancaster. (Compl. Ex. H ¶¶ 72-141.)

ONESCO contends that the alleged misrepresentations on which the Staudts relied were made by Lancaster prior to his association with ONESCO. Consequently, ONESCO argues that at the time of these initial transactions the Staudts were not customers and that Lancaster was not an associated person for purposes of NASD Rule 12200. Therefore, ONESCO maintains that it should not be compelled to arbitrate these claims. The Staudts argue that their arbitration claims are also predicated on actions and events occurring during Lancaster's tenure with ONESCO and on ONESCO's alleged negligent supervision of Lancaster. As such, they maintain that Rule 12200 applies to this dispute and that it must be submitted for arbitration.

### III.   DISCUSSION

#### *A. Motion to Compel Arbitration*[3]

*1. Preliminary Issues and Applicable Legal Standards*

As a threshold matter, the Court must ascertain who should properly decide the question of arbitrability.  *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001).  In the absence of a clear and express agreement between parties to arbitrate, the question of arbitrability should be decided by the court, not the arbitrator.  *PaineWebber v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).  "[O]ne party's membership in an exchange[] is insufficient, in and of itself, to evidence the parties' clear and unmistakable intent to submit the 'arbitrability' question to the arbitrators."  *John Hancock*, 254 F.3d at 57.  Therefore, determination of arbitrability rests with this Court.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.* 573 U.S. 79, 83 (2002)(citation and internal quotations omitted).  In deciding questions of arbitrability, the case law provides for a two-step approach:  The Court must determine (1) whether ONESCO "entered into an agreement to arbitrate," and, if it did, (2)

---

[3]  Because the legal standards for preliminary injunctions require the Court to evaluate the likelihood of success on the merits, the Court first focuses its analysis on the primary issue presented, namely whether the Staudts' NASD claims are arbitrable.

6

"whether [the] given dispute falls within the scope of that agreement." *Spear, Leeds & Kellogg v. Central Life Assurance, Co.*, 85 F.3d 21, 25 (2d Cir. 1996).

"Even where two parties have no explicit written agreement to arbitrate, NASD Rules 10101 and 10301(a) [now codified as Rule 12200] can bind NASD-members to arbitrate certain claims with third parties." *O.N. Equity Sales Co. v. Venrick*, 508 F. Supp. 2d 872, 874 (W.D. Wash. 2007) (citing supporting authority from the Fourth, Sixth and Eleventh Circuits); *see also John Hancock*, 254 F.3d at 58. ONESCO does not dispute that its membership in the NASD constitutes an agreement to arbitrate all disputes contemplated under NASD Rule 12200 (formerly Rule 10301). Therefore, the first step has been satisfied and the question before the Court is whether the underlying dispute between the Staudts and ONESCO falls within the scope of NASD Rule 12200.

*2. The Scope of NASD Rule 12200*

Rule 12200 provides for arbitration of "any dispute, claim, or controversy . . . between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated person . . . upon demand of the customer."  The Second Circuit has explained that the identically-worded predecessor rule, NASD Rule 10301, carries two substantive requirements. *John Hancock*, 254 F.3d at 58.  "First, the [Staudts'] claims must constitute a

7

'dispute . . . between a customer and a member and/or associated person.' Second, the dispute must 'arise in connection with the business of such member *or* in connection with the activities of such associated persons.'" *Id.* Consistent with the NASD Code, which defines "customer" to include all parties except brokers and dealers, the Second Circuit has interpreted the customer requirement broadly. *Id.* at 59. Investors seeking arbitration need to demonstrate only that they are customers of an associated person.[4] *Id.*

The facts relevant to both requirements are largely undisputed. The Staudts were Lancaster's customers; Lancaster was affiliated with ONESCO; and the claims arise out of Lancaster's activities. The primary argument advanced by ONESCO concerns the timing of these relationships. ONESCO alleges that the Staudts cannot qualify as customers under Rule 12200 because their relationship with Lancaster predated his association with ONESCO. Specifically, ONESCO contends that the conduct underlying the Staudts' arbitration claims occurred prior to Lancaster's tenure with ONESCO.

The Court finds ONESCO's argument unsupported by the facts.

---

[4] In *John Hancock*, the court noted that even if it were to adopt the narrower interpretation urged by the broker-dealer appellant, "at best it would raise an ambiguity as to the definition of 'customer.'" *John Hancock*, 254 F.3d at 59. As the court observed, any such ambiguity must be resolved in favor of arbitration. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

In fact, much of the conduct underlying the arbitration claims occurred after March 23, 2004, when Lancaster became a registered representative of ONESCO. The Court notes that the following relevant acts and events took place between April and November of 2004 during Lancaster's tenure with ONESCO: (1) the terms of the Lancorp private placement offering were materially altered; (2) Lancaster sent the Staudts a letter seeking confirmation of subscriptions and offering them an opportunity to obtain a return of all funds; (3) the Staudts confirmed their previous subscriptions; (4) the Staudts committed further funds to additional investment in the Lancorp Fund; (5) and the sale of the offering was finalized. In addition, prior to the Lancorp closing in May, 2004, all of the funds invested by the Staudts in the private placement were held by Lancaster. The record thus establishes that the Staudts' customer relationship with Lancaster continued during his tenure with ONESCO.

In support of its timing arguments, ONESCO cites extensively to two cases, *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993) and *Hornor, Townsend & Kent, Inc. v. Hamilton*, No. 1:01 CV 2979, 2004 WL 2284503 (N.D. Ga. Sept. 30, 2004). However, as other district courts have observed in related litigation, these cases are readily distinguishable. *See Venrick*, 508 F. Supp. 2d at 875-76; *O.N. Equity Sales Co. v. Prins*, No. 07-3075 (D. Minn. filed Nov. 6, 2007). *Wheat* and

*Hornor* both "involved allegations of wrongdoing that all arose before a NASD member became affiliated with [the] allegedly fraudulent individual." *Venrick*, 508 F. Supp. 2d at 875. The facts in the instant case are nearly identical to those in *Venrick* and *Prins*, and the analysis adopted by those courts applies with equal force to this matter. As the Court's factual findings demonstrate, the activity at issue in the Staudts' claim does not "predate[] the involvement of the NASD member." *Id.* at 876. Therefore, the Court finds that the Staudts qualify as customers under NASD Rule 12200.

ONESCO pursues the same timing argument with respect to the second requirement under Rule 12200, namely that the dispute must arise in connection with the business of a member or the activities of an associated person. ONESCO argues that the dispute arises in connection with Lancaster's activities prior to his affiliation with ONESCO. However, once again, the facts undercut this argument. All of the facts recited above, facts which ONESCO has failed to challenge except in a conclusory manner, are relevant here. The Court finds that these facts––in particular, the correspondence between Lancaster and the Staudts, the closing of the private placement in May, 2004, and the Staudts' continued investment––establish that the activities underlying the Staudts' claims continued well into Lancaster's tenure with ONESCO.

In addition, the Court notes that the Staudts have alleged that ONESCO is liable for the arbitration claims based on its own acts or omissions. The Staudts specifically allege negligent supervision by ONESCO of Lancaster during his association. The Eleventh Circuit has reasoned as follows: "The NASD requires that its members supervise the activities of their associated persons, as part of their business. . . . [Consequently, the] claim of negligent supervision satisfies the Code's second arbitration condition." *Multi-Financial Sec. Corp. v. King*, 386 F.3d 1364, 1370 (11th Cir. 2004) (citing *John Hancock*, 254 F.3d at 58-59); *see also Prins*, No. 07-3075, slip op. at 13. Thus, the Staudts' claim of negligent supervision is sufficient standing alone to bring the dispute within the scope of Rule 12200.

For these reasons, the Court finds that the dispute arose in connection with the activities of an associated person *and* in connection with the business of ONESCO. The Staudts have prevailed in establishing that the underlying dispute in this case falls within the scope of NASD Rule 12200, and therefore the Court grants the Motion to Compel Arbitration. Furthermore, the Court declines to sever any of the Staudts' claims. The issues raised by ONESCO go not to the question of arbitrability, but to liability. It is not the role of the Court to weigh the merits of the underlying claim; such is the province of the arbitrator.

11

*See AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-650 (U.S. 1986).

### *B. Motion for Preliminary Injunction*

"A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007). Injunctive relief is an extraordinary remedy and one not to be given lightly. *See, e.g., Register.com v. Verio, Inc.*, 356 F.3d 393, 426 (2d Cir. 2004).

In evaluating the movant's likelihood of success, the Court necessarily looks to the merits.  In this case, the question before the Court is one of arbitrability.  Having examined the question in detail above, the Court has found that the dispute between the parties is subject to arbitration under the NASD Code.  As such, ONESCO cannot establish a likelihood of success on the merits.  ONESCO has not argued that there are sufficiently serious questions to provide a "fair ground for litigation" and the Court does not find that any such questions exist.

Additionally, the Court finds that ONESCO has failed to establish that it will suffer irreparable harm.  "[B]eing forced

to expend time and resources arbitrating an issue that is not arbitrable" generally constitutes irreparable harm.  *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003).  However, in this case the Court has found the Staudts' claims to be arbitrable.  "In the absence of any likelihood of ONESCO's success on the merits, there is no threat of irreparable harm to ONESCO by compelling it to arbitrate."  *Prins*, No. 07-3075, slip op. at 16.  In contrast, if the Staudts are prevented from arbitrating their dispute, they may well be irreparably harmed.  Consequently, even assuming that this case provided a fair ground for litigation, the balance of hardships tips, if at all, in favor of the Staudts.

Because ONESCO has failed to make both of the requisite showings, the Motion for a Preliminary Injunction is denied.

### *C. Pending Motions*

Also pending before the Court are the following: Plaintiff's Motion for Consolidation of Trial on the Merits with Preliminary Injunction Hearing (Doc. 11); Defendants' Motion for Protective Order (Doc. 12); Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability (Doc. 16); and Plaintiff's Motion for an Order Precluding Summary Disposition of Defendants' Motion to Compel Arbitration (Doc. 26).  These motions are mooted by the Court's grant of an order compelling arbitration and by the Court's

denial of ONESCO's Motion for Preliminary Injunction. The Court adds two observations.

First, the Court finds that a well-developed record has been provided by the parties with regard to all pending motions. Although a motion for preliminary injunction ordinarily entails a hearing, a motion to compel arbitration need not require one. In cases such as this, where the dispositive factual issues are clear, the Court may summarily rule on pending motions. Based on the sufficiency of the record, the Court has found it unnecessary to hold a hearing. The Court notes that all of the district courts that have thus far issued rulings in related litigation have similarly weighed and evaluated the record. *See O.N. Equity Sales Co. v. Pals*, No. 07-4049, slip op. at 3 (N.D. Iowa, filed Sept. 6, 2007); *Venrick*, 508 F.Supp.2d at 873, n.1; *Prins*, No. 07-3075, slip op. at 18. None of these courts have found that further discovery or an oral hearing was required on the issue of arbitrability.

Second, ONESCO, in support of its motion for an order precluding summary disposition, has cited extensively to *Bensadoun v. Jobe-Riatt*, 316 F.3d 171 (2d Cir. 2002). ONESCO focuses on the following language in the opinion: "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* at 175. Although beyond dispute as a statement of law, the proposition does not

apply to a case such as this where the relevant facts have been firmly established.  *Bensadoun* is clearly distinguishable: the broker denied any contact with the investors and the investors did not controvert his allegations.  *Id.* at 178.  The record in this case, in contrast, establishes that Lancaster had direct contact with the Staudts during his tenure at ONESCO.  The facts here more closely parallel those in *John Hancock*.  As in *John Hancock*, the decisive inquiry concerns the scope of NASD Rule 12200, and no further fact-finding is necessary.  *See id.* at 176 (discussing *John Hancock*, 254 F.3d at 58-60).

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Preliminary Injunction (Doc. 10) and GRANTS Defendants' Motion to Compel Arbitration (Doc. 15).  Furthermore, the Court DENIES AS MOOT Plaintiff's Motion for Consolidation of Trial on the Merits with Preliminary Injunction Hearing (Doc. 11), Defendants' Motion for Protective Order (Doc. 12), Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability (Doc. 16), and Plaintiff's Motion for an Order Precluding Summary Disposition of Defendants' Motion to Compel Arbitration (Doc. 26).

Dated at Burlington, Vermont this 30th day of January, 2008.

										/s/ William K. Sessions III
										William K. Sessions III
										Chief Judge

16